[Cite as *State v. Stultz*, 2023-Ohio-4754.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

DAVID STULTZ

    Appellant

C.A. No.     20CA011625

APPEAL FROM JUDGMENT
ENTERED IN THE
AVON LAKE MUNICIPAL COURT
COUNTY OF LORAIN, OHIO
CASE No.    TRC1900395

DECISION AND JOURNAL ENTRY

Dated: December 27, 2023

FLAGG LANZINGER, Judge.

{¶1} David Stultz moved to reopen his appeal from the judgment of the Avon Lake Municipal Court after this Court affirmed his convictions in *State v. Stultz*, 9th Dist. Lorain No. 20CA011625, 2021-Ohio-2232 ("*Stultz I*"). This Court granted the application to reopen, and this matter is now before us for decision. For the following reasons, we vacate our prior decision in part, affirm the decision of the trial court, and remand the matter for the trial court to issue a nunc pro tunc entry to correct the sentencing entry.

I.

{¶2} In *State v. Graves*, this Court explained its obligations in a reopened appeal as follows:

Under Rule 26(B)(9) of the Ohio Rules of Appellate Procedure, "[i]f th[is] [C]ourt finds that the performance of appellate counsel was deficient and the applicant was prejudiced by that deficiency, [it] shall vacate its prior judgment and enter the appropriate judgment. If th[is][C]ourt does not so find, [it] shall issue an order confirming its prior judgment." Deficient performance by a lawyer is a performance that falls below an objective standard of reasonable representation.

*State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, at ¶ 204 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). A defendant is prejudiced by the deficiency if there is a reasonable probability that, but for his lawyer's errors, the result of the proceeding would have been different. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

(Alterations sic.) 9th Dist. Lorain No. 08CA009397, 2011-Ohio-5997, ¶ 9. With those obligations

in mind, we turn to the facts underlying the instant appeal.

{¶3} In *Stultz I*, this Court set forth the relevant factual and procedural background as

follows:

### Eyewitness 911 Call

At approximately 8:24 p.m. on April 15, 2019, a call came into the 911 dispatch center in Avon, Ohio. The caller, H.E., observed a black Cadillac Escalade ("SUV") driving erratically. H.E. testified she decided to call 911 because at one point the SUV swerved off the right-hand side of the road and overcorrected into oncoming traffic. H.E. was a passenger in her friend's vehicle and, while on the 911 call, they continued following the SUV. As H.E. and her friend followed the SUV, H.E. relayed information to the dispatcher about the location of the SUV and its erratic movements. H.E. testified that, as the SUV made a right turn onto Moore Road, the driver first went over the curb and then overcorrected again into oncoming traffic. The driver was able to get close enough for H.E. to relay the license plate information to the dispatcher. As the SUV left Avon and entered Avon Lake, H.E.'s call was transferred to Avon Lake dispatch.

Lieutenant Fran Tibbetts of the Avon Lake Police Department was at the Avon Lake dispatch center when H.E.'s call came in. Lt. Tibbetts testified he stayed just long enough to learn that an erratic driver was heading into Avon Lake's jurisdiction and then he immediately headed to his vehicle to attempt to intercept the SUV. As Lt. Tibbetts traveled in the direction of the SUV, dispatch continued relaying real-time information over the radio about the SUV's location and erratic movements. Dispatch also relayed the license plate number of the SUV and the address where the vehicle was registered. As Lt. Tibbetts continued to head in the direction of the SUV, dispatch informed him the SUV had turned onto Westbrook Circle, the street corresponding to the vehicle's registration.

### The Arrest

Lt. Tibbetts arrived on Westbrook Circle shortly thereafter. As he proceeded down the street, he passed a car with two women in the front seats. The women were pointing to a black SUV parked in the driveway at a home at the top of a cul-de-

sac. Lt. Tibbetts inferred the vehicle occupants were the 911 callers. The vehicle the women were pointing at matched the description of the SUV that Lt. Tibbetts was trying to locate. Further, the SUV was parked at the address that the dispatcher relayed to him. As Lt. Tibbetts parked and approached the SUV, Officer Tim Schleicher, also of the Avon Lake Police Department, joined him.

As Lt. Tibbetts and Officer Schleicher exited their vehicles, the SUV was running in the driveway. Loud music was emanating from the vehicle and the driver's side door was open. The officers found Mr. Stultz seated in the driver's seat. Upon making contact, Lt. Tibbetts described Mr. Stultz as appearing to be "extremely" intoxicated and testified that Mr. Stultz was "mumbling incoherently." Both officers testified that his eyes were bloodshot and glassy and an odor of alcohol was coming from the vehicle and Mr. Stultz's person. Lt. Tibbetts asked Mr. Stultz to step out of the vehicle and both officers indicated Mr. Stultz had trouble exiting his vehicle safely. As both officers helped him exit the vehicle, Mr. Stultz knocked his lit cigarette into Officer Schleicher's arm. Mr. Stultz was agitated and combative with the officers. Because of his condition, the officers determined that field sobriety tests could not be safely performed.

Both officers testified that Mr. Stultz kept mumbling about his dog being in the house. Officer Schleicher testified that when asked if anyone was in the house, Mr. Stultz responded that just his dog was in the house. Officer Schleicher then entered the open garage and knocked "many times" on the garage door of the home. No one appeared at the door in response to Officer Schleicher's knocking. Officer Schleicher also testified that he did not hear a dog barking. Before leaving the scene, Officer Schleicher testified he went around to the back of the house to make sure a dog was not tied up in the yard and did not find the dog, or anyone, in the backyard.

Lt. Tibbetts then placed Mr. Stultz under arrest and Officer Schleicher transported him back to the station for booking. Mr. Stultz then refused a breathalyzer test at the police station. Mr. Stultz was charged with one count of violating R.C. 4511.19(A)(1)(a), operating a motor vehicle while under the influence of alcohol or drugs.

### Suppression and the Trial

Mr. Stultz entered a plea of not guilty to operating a motor vehicle while under the influence of alcohol or drugs. Mr. Stultz then filed a motion to suppress on the grounds that the officers lacked probable cause to arrest him. The trial court denied his motion, finding the officers had probable cause to arrest Mr. Stultz.

The case proceeded to trial. Both officers and H.E. testified at trial. Mr. Stultz also testified at trial in his own defense and admitted to consuming about eight drinks over a period of about three hours that evening. He argued that he was not driving that night, and presented a witness, A.C., whom he alleged was driving his SUV

that evening. A.C., a 17-year-old friend and part-time employee of Mr. Stultz, testified he was driving Mr. Stultz's SUV on the night in question. A.C. testified he let Mr. Stultz out of the SUV before backing into the driveway and then A.C. exited the SUV and went into the house. This testimony directly contradicted the testimony of H.E., who testified that she followed the SUV until it pulled into the driveway and continued watching the SUV until the police officers arrived. H.E. stated she could see the driver's side door of the vehicle and that no one exited the vehicle before the officers arrived. H.E. also testified at trial that after the officers arrived at the scene, she received a phone call from the police department asking her to come down and make a written statement. She went to the police station and gave a written statement.

A jury convicted Mr. Stultz of the sole count of operating a motor vehicle while under the influence of alcohol or drugs.

*Stultz I* at ¶ 2-10.

**{¶4}** In his direct appeal, Mr. Stultz raised three assignments of error, asserting that: (1) the trial court erred by denying his motion to suppress because the record did not reflect that the officers had probable cause to arrest him; (2) the trial court erred by admitting a video taken from inside of Officer Schleicher's cruiser as he transported Mr. Stultz to police headquarters for booking; and (3) his conviction for operating a vehicle while under the influence was against the manifest weight of the evidence. *Id.* at ¶ 11, 18, 24. This Court overruled Mr. Stultz's first assignment of error on its merits, concluding that the trial court did not err by denying his motion to suppress because the officers had probable cause to arrest him. *Id.* at ¶ 15-17. This Court overruled Mr. Stultz's second and third assignments of error, in relevant part, on the basis that any analysis of those assignments of error required a review of the police cruiser video, which was not made part of the record on appeal. This Court, therefore, presumed regularity in the proceedings and overruled those assignments of error. *Id.* at ¶ 21, 27-28.

**{¶5}** Mr. Stultz then moved to reopen his direct appeal, arguing that his prior appellate counsel rendered ineffective assistance by failing to ensure that the police cruiser video was made part of the record on appeal. This Court granted Mr. Stultz's application to reopen. In his reopened

appeal, Mr. Stultz raises three assignments of error for this Court's review. Additionally, pursuant to Appellate Rule 26(B)(7), Mr. Stultz has addressed the claim that his prior appellate counsel rendered ineffective assistance.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY ADMITTING THE POLICE CRUISER VIDEO OF A VISIBLY INTOXICATED APPELLANT MAKING PROFANE REMARKS TOWARD THE POLICE OFFICERS.

{¶6} In his first assignment of error, Mr. Stultz argues that the trial court abused its discretion under Evid.R. 403(A) when it admitted the video from the police officer's cruiser into evidence. Mr. Stultz also argues that his prior appellate counsel rendered ineffective assistance by failing to ensure that the police cruiser video was made part of the record on appeal, which precluded this Court from reviewing the merits of his argument as to whether the trial court erred by admitting it into evidence. This Court concludes that Mr. Stultz's prior appellate counsel rendered ineffective assistance by failing to ensure that the police cruiser video was made part of the record on appeal. We, therefore, vacate our prior judgment to the extent that this Court declined to reach the merits of Mr. Stultz's second assignment of error regarding the admissibility of the police cruiser video. *See Stultz*, 2021-Ohio-2232, at ¶ 21. This Court has now reviewed the merits of Mr. Stultz's argument in this reopened appeal. For the following reasons, this Court overrules Mr. Stultz's first assignment of error.

{¶7} Evid.R. 403(A) provides that, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." As the Ohio Supreme Court has acknowledged:

"Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a

litigant's case would be excludable under Rule 403. Emphasis must be placed on the word 'unfair.' Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect."

*Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172 (2001), quoting Weissenberger, *Ohio Evidence*, Section 403.3, 85-87 (2000).

{¶8} This Court "appl[ies] an abuse of discretion standard of review to Evid.R. 403(A) challenges." *State v. Sutton*, 9th Dist. Medina No. 18CA0057-M, 2020-Ohio-2878, ¶ 23. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶9} This Court's review of the police cruiser video indicates that the video is almost seven minutes long, and depicts Mr. Stultz sitting in the back seat of the police cruiser while he is being transported to police headquarters for booking. Mr. Stultz is heard slurring, repeatedly cursing at the police officer, and threatening to sue the police officers for arresting him.

{¶10} Mr. Stultz asserts that he never disputed that he was intoxicated on the night of his arrest, and that the police cruiser video was not probative as to who was driving his vehicle. Mr. Stultz, therefore, argues that "[t]he real point of playing the video was to show [he w]as a drunken jerk who was disrespectful to police even though it did not provide any probative evidence as to whether [he] was driving that night." Mr. Stultz argues that the case boiled down to the credibility of the witnesses, and that "[p]laying the video was all about influencing the jury to disregard [his] and [A.C.'s] testimonies[,]" and to "appeal to the jury's emotions and instinct to punish [him] for his intoxicated, agitated, and disrespectful conduct, rather than appeal to their intellect as to whether [he] drove that night." As a result, he argues, the probative value of the police cruiser video was substantially outweighed by the danger of unfair prejudice. This Court disagrees.

{¶11} As this Court stated in *Stultz I*, the record does not indicate that Mr. Stultz stipulated–nor offered to stipulate-that he was intoxicated. *Stultz I*, 2021-Ohio-2232, at ¶ 20. Thus, during its case-in-chief, the State had the burden to present sufficient evidence to establish that Mr. Stultz was under the influence of alcohol on the night of his arrest. *See* R.C. 4511.19(A)(1)(a) (providing that no person "under the influence of alcohol" shall operate a vehicle); *State v. Carte*, 5th Dist. Guernsey No. 20CA00004, 2020-Ohio-6752, ¶ 22 (noting that the appellant did not stipulate as to his intoxication, and that his "failure to contest intoxication did not obviate the necessity on the part of the State to prove intoxication as an element of R.C. 4511.19(A)(1)(a).").  The fact that Mr. Stultz later testified during the defense's case that he drank alcohol on the night of his arrest did not–and could not–relieve the State of its burden in its case-in-chief. *See id.*  While the police officers testified as to Mr. Stultz's intoxication, the police cruiser video corroborated their testimony. *See Carte* at ¶ 22 (stating that, although witnesses testified as to the appellant's intoxication, "the best evidence by which the jury could make a determination for themselves as to whether Appellant was intoxicated was by watching the [bodycam] videos."). Having reviewed the record, this Court cannot say that the trial court abused its discretion by admitting the police cruiser video into evidence. *Id.*  Accordingly, Mr. Stultz's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY ADOPTING THE JURY'S VERDICT, WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12} In his second assignment of error, Mr. Stultz challenges the weight of the evidence presented at trial.  Mr. Stultz  also argues that his prior appellate counsel rendered ineffective assistance by failing to ensure that the police cruiser video was made part of the record on appeal, which precluded this Court from reviewing the merits of his manifest-weight argument.  This Court

concludes that Mr. Stultz's prior appellate counsel rendered ineffective assistance by failing to ensure that the police cruiser video was made part of the record on appeal. We, therefore, vacate our prior judgment to the extent that this Court declined to reach the merits of Mr. Stultz's third assignment of error regarding the manifest weight of the evidence. *See Stultz*, 2021-Ohio-2232, at ¶ 26-28. This Court has now reviewed the merits of Mr. Stultz's argument in this reopened appeal. For the following reasons, this Court overrules Mr. Stultz's second assignment of error.

{¶13} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶14} Mr. Stultz's challenge to the manifest weight of the evidence is limited to the evidence presented regarding whether he was driving his vehicle on the night of his arrest. Mr. Stultz argues that the jury was clearly influenced by the police cruiser video, which–he surmises– caused the jury to disregard his and A.C.'s testimonies regarding their version of the events.

{¶15} As Mr. Stultz acknowledges, the State and the defense presented two competing versions of the events at trial. The State presented testimony from H.E., who testified that she followed the SUV until it pulled into a driveway, and that she did not see anyone exit or enter the SUV prior to the police arriving. The State also presented testimony from police officers who testified that Mr. Stultz was seated in the front seat of the SUV, which was running, when they arrived. The officers testified that Mr. Stultz mentioned his dog being in the house, so an officer

knocked on the door of the house. The officers did not hear a dog inside the house, and no one answered the door.

**{¶16}** Mr. Stultz, on the other hand, testified that his 17-year-old friend and part-time employee, A.C., drove him home, and that A.C. was in the house when the police arrived. According to Mr. Stultz, he was inspecting his SUV, which he used for a transportation service, when the police arrived.

**{¶17}** According to A.C., he drove Mr. Stultz home, exited the SUV through the driver's side door, and went inside the house. A.C. testified that he never heard anyone knock on the door while he was inside, and that he eventually went to the backyard with the dog. A.C. testified that he never swerved into another lane while driving Mr. Stultz home, but testified that he may have driven onto a curb when he dropped something on the floorboard of the SUV.

**{¶18}** Mr. Stultz's argument on appeal relies upon his version of the events, which the jury was not required to believe. *State v. McManaway*, 9th Dist. Wayne No. 20AP0046, 2022-Ohio-2086, ¶ 18, citing *State v. Straughan*, 9th Dist. Summit No. 29549, 2021-Ohio-1054, ¶ 34; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35 ("[T]he jury is free to believe all, part, or none of the testimony of each witness."). As this Court has stated, a jury is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony." *State v. Quinn*, 9th Dist. Medina No. 18CA0022-M, 2019-Ohio-3980, ¶ 18.

**{¶19}** Here, the jury was free to disbelieve Mr. Stultz's testimony that he was not driving, and that he was simply inspecting his SUV when the police arrived. This is especially so considering the fact that, on the night of the arrest, Mr. Stultz never claimed that A.C., nor anyone else, had driven him home. The jury was also free to disbelieve A.C.'s testimony, who worked for

Mr. Stultz part-time and claimed to have been inside the house and/or in the backyard with the dog when the police arrived, yet he never heard the police knock on the door.

{¶20} Conversely, the jury was free to believe H.E.'s testimony. H.E. testified that she called the police because she witnessed an SUV driving erratically, and that she never saw anyone exit the SUV prior to the police arriving. The jury in this case chose to believe the State's version of the events over the defense's version of events, which does not render Mr. Stultz's conviction against the manifest weight of the evidence. *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13 ("We will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version."). Having reviewed the record, this Court concludes that this is not the exceptional case in which the evidence weighs heavily against Mr. Stultz's conviction. *Otten*, 33 Ohio App.3d at 340. Accordingly, Mr. Stultz's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY STATING IN THE SENTENCING ENTRY THAT APPELLANT PLED GUILTY.

{¶21} In his third assignment of error, Mr. Stultz argues that the trial court erred when it noted in its sentencing entry that Mr. Stultz pleaded guilty. Mr. Stultz argues that this is a clerical error, and that the trial court should correct its error by issuing a nunc pro tunc entry.

{¶22} Crim.R. 36 permits a court to correct clerical mistakes in its judgments at any time. "When the record of sentencing clarifies what the trial court actually decided, clerical errors in a sentencing entry can be corrected through a nunc pro tunc entry." *State v. Al-Zerjawi*, 9th Dist. Summit No. 29681, 2021-Ohio-2237, ¶ 7; *State v. Morgan*, 9th Dist. Summit No. 29490, 2020-Ohio-3955, ¶ 7.

**{¶23}** Here, the record is clear that Mr. Stultz pleaded not guilty and that the matter proceeded to a jury trial. The trial court's sentencing entry, however, erroneously indicates that Mr. Stultz pleaded guilty. As a result, Mr. Stultz's assignment of error is sustained, and we remand the matter for the trial court to issue a nunc pro tunc entry to correct the sentencing entry.

III.

**{¶24}** Pursuant to App.R. 26(B), this Court vacates its prior decision in *State v. Stultz*, 9th Dist. Lorain No. 20CA011625, 2021-Ohio-2232 to the extent that this Court declined to reach the merits of Mr. Stultz's second and third assignments of error in his initial appeal. Mr. Stultz's first and second assignments of error in this reopened appeal are overruled. Mr. Stultz's third assignment of error in this reopened appeal is sustained. The matter is remanded for the issuance of a nunc pro tunc entry to correct the sentencing entry.

Judgment affirmed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Avon Lake Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

STEVENSON, J.
CONCURS.

CARR, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶25} I would analyze Mr. Stultz's manifest weight argument differently. As I discussed in my prior separate opinion, *see State v. Stultz*, 9th Dist. Lorain No. 20CA011625, 2021-Ohio-2232, ¶ 33-35 (Carr, J. concurring in judgment only), Mr. Stultz's manifest weight argument was reviewable in the original appeal despite the video not being in the record. Accordingly, I would overrule Mr. Stultz's second assignment of error on that basis.

APPEARANCES:

STEPHEN P. HANUDEL, Attorney at Law, for Appellant.

JOHN L. REULBACK, JR., Prosecuting Attorney, for Appellee.